**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
MICHAEL BEATTIE,              )
                              )
          Plaintiff,          )
                              )
     v.                       )     Civil Action No. 01-2493 (RWR)
                              )
MICHAEL J. ASTRUE, et al.,    )
                              )
          Defendants.         )
_____)
```

<u>MEMORANDUM OPINION</u>

The four remaining claims[1] of plaintiff Michael Beattie's second amended complaint allege violations of the Due Process Clause and the Freedom of Information and Privacy Acts, and a <u>Bivens</u> tort against an administrative law judge ("ALJ"), the Commissioner of the Social Security Administration ("SSA")[2] and

_____

[1] On February 23, 2011, Counts I and II of the second amended complaint were deemed to be dismissed.  Count I challenged the SSA's overpayment determination, and Count II challenged the denial of Beattie's application to participate in the agency's Plan for Achieving Self-Support ("PASS") Program.  (<u>See</u> 2d Am. Compl. ¶¶ 45-58.)  Accordingly, neither of these claims will be analyzed here.  Beattie's remaining claims may be so derivative of Counts I and II as to be eligible for summary dismissal here.  For example, Counts III and IV allege due process violations that occurred during the January 14, 2000 overpayment proceeding; Count VI (misnumbered as a second Count V) seeks money damages from the ALJ who conducted the hearing; and Count V alleges violations under the FOIA and Privacy Acts relating to information he requested from his SSA file.  In the interest of fairness, however, each claim will be evaluated on its merits.

[2] Michael J. Astrue is substituted as a defendant under Fed. R. Civ. P. 25(d)(1).

-2-

five unnamed SSA employees.  <u>See</u> 5 U.S.C. §§ 552, 552a; <u>Bivens v.</u> <u>Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).  The Commissioner has moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss[3] Beattie's second amended complaint[4] or, in the alternative, for a judgment affirming the agency's determinations.  Because the second amended complaint fails to state claims upon which relief can be granted, the defendant's motion to dismiss will be granted.

<u>**BACKGROUND**</u>

The SSA began issuing supplemental security income ("SSI") payments to Beattie, a blind former lawyer, in 1993 or 1994.  (2d Am. Compl. ¶¶ 7, 12; Def.'s Response to the Court's March 8, 2011 Minute Order ("Def.'s Response") at 2-3; Feb. 1, 2005 Administrative Record ("A.R.") at 8, 41.)  Between June of 1995 and August of 1997, the SSA inadvertently overpaid Beattie a sum of $12,718.00.  (A.R. at 8.)  The agency warned him that his failure timely to supplement his financial records for that period could cause the SSA to terminate payments.  (<u>Id.</u> at 4; <u>see</u>

---

[3] Per the Commissioner's request, his motion to dismiss the first amended complaint will be applied to the second amended complaint.  (<u>See</u> Def.'s Response to the Court's March 8, 2011 Minute Order at 1.)

[4] The caption of the second amended complaint incorrectly describes Beattie as the class representative of "similarly situated SSA beneficiaries."  (<u>See</u> 2d Am. Compl. at 1.)  Having neither moved to certify a class nor been selected as a class representative, he proceeds in this matter as an individual plaintiff.

also 2d Am. Compl. ¶ 9.)  Despite that warning, Beattie missed

the deadline for providing supplemental documentation.  (A.R. at

6; Def.'s Mot. at 6.)  He was assessed with an overpayment and,

upon reconsideration of the overpayment determination, the SSA

concluded that Beattie's bank accounts exceeded the permissible

resource limit for eligible SSI recipients.  (A.R. at 16.)

Beattie requested and was granted a hearing before ALJ

Christine Benagh to review the agency's overpayment decision.

(2d Am. Compl. ¶ 13; A.R. at 22.)  He represented himself at the

hearing because, according to him, the local SSA office,

believing that "he did not need a lawyer[,]" declined to provide

him a list of nonprofit agencies providing free or low-cost legal

assistance.  (2d Am. Compl. ¶ 14.)  During an April 9, 1998

hearing, the ALJ remanded the matter to the SSA to clarify how

the agency computed the overpayment, and to allow Beattie time to

produce his tax returns for the period in question.  (Id. ¶ 17;

A.R. at 38-39.)  In turn, the agency requested tax and other

financial information from Beattie.  (A.R. at 48-49, 51.)

Emily Kaufman, Esq. was appointed Beattie's representative

on June 29, 1999.[5]  (Feb. 8, 2008 A.R. ("Second A.R.") at 20.)

He and Kaufman produced "some but not all" of the documents the

---

[5] Beattie claims that Kaufman was "one of [his] two
representatives," but he points to no evidence in the
administrative record that suggests that any other attorney
represented him during the pendency of his administrative case.
(Pl.'s Opp'n at 4, 6.)

-4-

SSA sought.  (Def.'s Mot. at 6; see also A.R. at 51, 53-54, 57 (stating that Beattie had "appoint[ed] [her] as his representative").)  The agency thereafter upheld its overpayment determination.  (Def.'s Mot. at 7 (stating that this fact "is undisputed" though the SSA cannot locate the document reflecting that decision).)

During a January 14, 2000 hearing before the same ALJ, Beattie spoke on his own behalf while Kaufman merely observed.[6] (A.R. at 66; see also 2d Am. Compl. ¶ 22 (stating that he was rebuffed upon "again request[ing] [from the local SSA office] the list . . . of attorneys providing free legal assistance").) Beattie alleges that the ALJ held the first portion of the hearing in his and his "two representatives'" absence and that, during the remainder of the hearing, she repeatedly violated his right to due process and asserted herself as "prosecutor, agency, attorney, and judge."  (See 2d Am. Compl. ¶¶ 23, 73.)  For example, the ALJ allegedly threatened to discipline or disbar Kaufman, refused to allow his second representative to speak, barred Beattie from admitting evidence or calling witnesses, "stated that a decision affirming the overpayment decision had been made prior to the hearing," and threatened that Beattie

---

[6] The ALJ addressed the apparent tension between Beattie and Kaufman: "Regarding [Kaufman's] status, advice, and some other issues[] . . . [t]here is some disagreement, because [she] is sitting silent. . . .  Miss Kauffman [sic] . . . was at one time representing you."  (A.R. at 68, 73.)

-5-

"would be subjected to a criminal prosecution" if he declined to accept the local SSA office's settlement offer regarding repayment of the overpaid sum. (2d Am. Compl. ¶¶ 25, 27[7], 60, 63; Pl.'s Opp'n at 4.) The ALJ allegedly later destroyed the portions of the recording reflecting her "threats, belligerent tone and word choice, and misconduct." (2d Am. Compl. ¶ 26.) According to Beattie, Assistant United States Attorney Fred Haynes likewise threatened him with prosecution in order to secure settlement. (Id. ¶¶ 37-42.)

Kaufman wrote to the ALJ as Beattie's representative on May 21, 2000, stating that Beattie "wishe[d] to withdraw his request for [an overpayment] hearing and have his case remanded to the [local SSA] [o]ffice."[8] (A.R. at 78.) She added that Beattie "ha[d] agreed to repay the overpayment from June 1995 through August 1997." (Id.) On July 14, 2000, a second ALJ signed a notice dismissing Beattie's request for a hearing on the basis of representations made in Kaufman's letter.[9] (Id. at 80,

_____

[7] The second amended complaint lists two twenty-seventh paragraphs. This citation encompasses them both.

[8] Beattie contests that Kaufman represented him at the time she moved to withdraw Beattie's request for a hearing. (Pl.'s Opp'n at 6.) However, his second amended complaint confirms that Kaufman represented him in matters concerning the overpayment of SSI benefits. (2d Am. Compl. ¶ 23 ("One representative assisted him only on the overpayment case[.]"); see also Feb. 8, 2008 A.R. at 19-20 (stating that "a signed [Form] 1696[] appoint[ed] [Kaufman] as his representative").)

[9] An ALJ may dismiss a request for a hearing if, "at any time before notice of the hearing decision is mailed, . . . the party or parties that requested the hearing ask to withdraw the

-6-

82.)  Beattie unsuccessfully appealed the dismissal to the SSA

Appeals Council, which concluded "that there [wa]s no basis under

the above regulations for granting [his] request for review."[10]

(2d Am. Compl. ¶ 33; A.R. at 87.)

Beattie claims to have requested orally and in writing,

under FOIA and the Privacy Act, "all documents related to or

mentioning him and all documents related [to] the handling of SSI

overpayment claims[.]"  (Pl.'s Opp'n at 4; see also 2d Am. Compl.

¶¶ 10, 18.)  According to him, the local SSA office refused to

provide him the requested documents because: 1) the file

contained such "scandalous, offensive, or defamatory" information

that "it would be medically counter-productive to allow him to

see his file"; and 2) "claimant was mentally ill and he would

find the contents too depressing to read."  (2d Am. Compl ¶ 18;

Pl.'s Opp'n at 4.)  He alleges that the local office likewise

declined to "transmit [his] FOIA and Privacy Act requests . . .

to its Office of Disclosure."  (2d Am. Compl. ¶ 21.)  According

to Beattie, he exhausted his administrative remedies after the

SSA "issued two final decisions denying [him] access to [these]

agency records."  (Id. ¶ 81.)

---

request."  20 C.F.R. § 416.1457(a).  Because Beattie withdrew his
request, no hearing was held and no final decision ever issued.

[10] Beattie's application provided no facts to support a
review.  (A.R. at 83-85.)

-7-

Beattie's four remaining causes of action include alleged due process violations sustained during and after the January 14, 2000 administrative proceeding, claims under FOIA and the Privacy Act, and a <u>Bivens</u> tort against the first ALJ.  The Commissioner argues that Beattie's failure to exhaust his due process claims at the administrative level precludes subject-matter jurisdiction over them, and that Beattie has failed to state claims for relief under FOIA, the Privacy Act, and <u>Bivens</u>.  <u>See also</u> 42 U.S.C. § 405(g) (describing the exhaustion requirement).  Beattie contends that he has "exhausted his administrative remedies." (2d Am. Compl. ¶ 44.)

## DISCUSSION

A complaint may be dismissed for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6). While a pro se complaint should be liberally construed, it must nonetheless "present a claim on which the Court can grant relief."  <u>Link v. U.S.</u>, 539 F. Supp. 2d 360, 361 (D.D.C. 2008). To survive a Rule 12(b)(6) motion, a complaint must "recite[] facts sufficient to at least 'raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"  <u>Am. Fed'n of State, Cnty., Mun. Employees Local 2401 v. D.C.</u>, 796 F. Supp. 2d 136, 139 (D.D.C. 2011) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  "[D]etailed factual

-8-

allegations" are unnecessary.  Twombly, 550 U.S. at 555.

However, "a complaint that offers only 'labels and conclusions,'"

"tenders naked assertion[s] devoid of further factual

enhancement," or advances nothing more than "an unadorned, the-

defendant-unlawfully-harmed-me accusation[,]" will not suffice.

Mekuria v. Bank of Am., Civil Action No. 10-1325 (JEB), 2011 WL

4430868, at *3 (D.D.C. Sept. 23, 2011) (quoting Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949 (2009)).  The court need not accept

any inferences unsupported by facts alleged in the complaint.

Marshall v. Honeywell Tech. Solutions, Inc., 536 F. Supp. 2d 59,

65 (D.D.C. 2008).

In deciding a Rule 12(b)(6) motion, a court may consider

"'the facts alleged in the complaint, documents attached as

exhibits or incorporated by reference in the complaint,'" Ward v.

D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119

(D.D.C. 2011) (quoting Gustave-Schmidt v. Chao, 226 F. Supp. 2d

191, 196 (D.D.C. 2002)), or "'documents upon which the

plaintiff's complaint necessarily relies' even if the document is

produced not by the plaintiff in the complaint but by the

defendant in a motion to dismiss." Id. (quoting Hinton v. Corr.

Corp. of Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).

I.   DUE PROCESS CLAIMS

Beattie alleges that the defendants denied him due process

by failing to allow him to call witnesses, submit evidence, be

represented by an attorney, or testify, and by threatening him

with criminal prosecution and Kaufman with disbarment during the

administrative hearing held on January 14, 2000.[11]  (2d Am.

Compl. ¶¶ 25-28, 59-75; see also Pl.'s Opp'n at 11-15.)  The

Commissioner moves to dismiss the claim for failure to exhaust or

to show waiver of exhaustion of administrative remedies, which

"courts in this circuit tend to treat . . . as a failure to state

a claim rather than as a jurisdictional deficiency."[12]  Ly v.

U.S. Postal Serv., 775 F. Supp. 2d 9, 11 (D.D.C. 2011).  (Def.'s

Mot. at 17-18.)  Alternatively, the Commissioner moves for

dismissal for Beattie's failure to plead colorable constitutional

claims.[13]

---

[11] More particularly, Beattie alleges in Count III that he
was (1) "compelled upon pain of false and malicious prosecution
to give up due process rights in a civil case" (2d Am. Compl.
¶ 62); (2) denied the right to counsel because the judge refused
to permit one of his attorneys to speak and forced the other
representative to withdraw from the case (id. ¶ 65); and (3)
barred from presenting evidence and witnesses (id. ¶¶ 25, 63-64).
In Count IV, he alleges that the SSA impermissibly combined the
functions of prosecutor, agency, attorney and judge during the
January 14, 2000 hearing.  (Id. ¶ 73.)

[12] "A motion to dismiss under Rule 12(b)(1) for lack of
subject matter jurisdiction is inappropriate where a defendant
claims that a plaintiff failed to comply with only the
non-jurisdictional exhaustion requirement [rather than the
presentment requirement]."  Cost v. SSA, 770 F. Supp. 2d 45, 49
(D.D.C. 2011).  Here, the Commissioner appears to challenge
Beattie's satisfaction of the presentment requirement as well.
(See Def.'s Mot. at 20.)

[13] Since Beattie's opposition does not specifically address
the exhaustion and presentment requirements as to his due process
claims, the Commissioner's arguments may be deemed conceded.
Rosenblatt v. Fenty, 734 F. Supp. 2d 21, 22 (D.D.C. 2010) ("[A]n

-10-

A.    Exhaustion and presentment requirements

The APA permits judicial review of final agency action.

Hall v. Sebelius, 689 F. Supp. 2d 10, 17 (D.D.C. 2009).  An

"[a]gency action" is "the whole or part of an agency rule, order,

license, sanction, relief, or the equivalent or denial thereof,

or failure to act."  Id. at 19 (internal quotation marks and

citation omitted).  A final agency action "1) represents the

consummation of the agency's decisionmaking process and 2)

determines rights or obligations or creates legal consequences."

Id.  More specifically, final SSA decisions eligible for judicial

review follow four steps of an administrative review process: (1)

an initial determination; (2) a reconsideration determination;

(3) a hearing before an ALJ; and (4) review by the Appeals

Council.  See 20 C.F.R. §§ 404.900(a)(1)-(4), 416.1400(a).  "If

[complainants] are dissatisfied with [the agency's] final

decision, [they] may request judicial review by filing an action

in a Federal district court."  20 C.F.R. § 404.900(a)(5).

However, "even where there is final agency action, the Court must

consider [whether] '[t]he administrative remedies prescribed by

the [agency] [have been] exhausted.'"  Hall, 689 F. Supp. 2d at

17 (quoting Mathews v. Eldridge, 424 U.S. 319, 328 (1976)).

---

argument in a dispositive motion that the opponent fails to
address in an opposition may be deemed conceded[.]")  However,
Beattie's opposition will be construed as incorporating by
reference the paragraph of his second amended complaint that
claims he exhausted all administrative remedies.  (2d Am. Compl.
¶ 44.)

-11-

The D.C. Circuit has distinguished between the "final decision element of [the] exhaustion requirement (from which a court could relieve a plaintiff) and the nonwaivable element [of 42 U.S.C. § 405(g) which] is the requirement that a claim for benefits shall have been presented to the [Commissioner]." Action Alliance of Senior Citizens v. Leavitt, 483 F.3d 852, 857 (D.C. Cir. 2007) (internal quotation marks and citation omitted) (emphasis removed); accord Cost v. SSA, 770 F. Supp. 2d 45, 48-49 (D.D.C. 2011). See also Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir. 2004) ("exhaustion is a prudential consideration rather than a jurisdictional prerequisite[.]"). "'[T]he exhaustion requirement may be waived in only the most exceptional circumstances.'" Ly, 775 F. Supp. 2d at 12 (quoting Communic'ns Workers of AT&T, 40 F.3d 426, 432 (D.D.C. 1994)). "'A court may waive the exhaustion requirements of § 405(g) when: (1) the issue raised is entirely collateral to a claim for payment; (2) plaintiffs show they would be irreparably injured were the exhaustion requirement enforced against them; and (3) exhaustion would be futile.'"[14] Hall, 689 F. Supp. 2d at 18 (quoting Triad at Jeffersonville I, LLC v. Leavitt, 563 F. Supp. 2d 1, 16

---

[14] In Ryan v. Bentsen, 12 F.3d 245, 247-48 (D.C. Cir. 1993), the D.C. Circuit likewise described collaterality and irreparable harm as prerequisites to judicial waiver of the exhaustion requirement. Ryan posited its own, separate prerequisite: the claimant's challenge to the constitutionality of a Social Security Act provision. Id. This prerequisite has no bearing here, as Beattie has mounted no such challenge.

-12-

(D.D.C. 2008)).  By contrast, the "presentment requirement [i]s

an 'absolute prerequisite' to review[.]"  Action Alliance, 483

F.3d at 857 (quoting Nat'l Kidney Patients Ass'n v. Sullivan, 958

F.2d 1127, 1129-30 (D.C. Cir. 1992)).  Courts in this circuit

will "find[] a lack of jurisdiction where a plaintiff proceeded

directly to district court," id. (quotation marks and citation

omitted), since considering the plaintiff's arguments here "would

undercut 'the purposes of exhaustion[,]" Kenney v. U.S. Dep't of

Justice, 700 F. Supp. 2d 111, 118 (D.D.C. 2010) (quotation marks

and citation omitted).  Among those purposes are "'preventing

premature interference with agency processes, . . . afford[ing]

the parties and the courts the benefit of [the agency's]

experience and expertise, . . . [and] compil[ing] a record which

is adequate for judicial review.'"  Id. (quoting Hidalgo v. FBI,

344 F.3d 1256, 1259 (D.C. Cir. 2003) (alteration in original).

     Beattie has insufficiently demonstrated his entitlement to

waiver of the exhaustion requirement.  On the one hand, his due

process claims are "collateral to a demand for benefits" since he

alleges that due process violations caused his "demand" to be

denied.  Bamberg v. Astrue, No. 10 Civ. 6348, 2011 WL 4000898, at

*5 (S.D.N.Y. Sept. 8, 2011) (finding that "a violation of [a

claimant's] due process rights and of the [Social Security Act]

. . . might warrant a judicial waiver of the exhaustion

requirement.")  However, the record does not establish that

requiring exhaustion would be futile. "For exhaustion to be futile, there must be a certainty of an adverse decision or indications that pursuit of administrative remedies would be clearly useless." Cost, 770 F. Supp. 2d at 50.[15] Beattie has not shown a certainty of an adverse determination about an alleged violation he never presented for review. Moreover, Beattie would not suffer irreparable harm if the exhaustion requirement were enforced against him. (See Def.'s Mot. at 18.) "An irreparable harm is an imminent injury that is both great and certain to occur, and for which legal remedies are inadequate." Beattie v. Barnhart, 663 F. Supp. 2d 5, 9 (citation omitted). Here, requiring Beattie to exhaust his administrative remedies poses no great harm, and nothing prohibits Beattie from pursuing a full panoply of legal remedies after he does so.[16] See Mathews, 424 U.S. at 331 (holding that plaintiff showed irreparable harm where he claimed that he would be damaged "in a way not recompensable through retroactive payments.")

_____

[15] Accord Hall, 689 F. Supp. 2d at 24 (quoting Etelson v. OPM, 684 F.2d 918, 925 (D.C. Cir. 1982) (explaining that in the D.C. Circuit, futility exists where "an agency . . . has made known that its general views are contrary to those of the complainant, and has never given an inkling that it would consider a matter afresh[.]").)

[16] Beattie alleges that he would be irreparably harmed if the court does not "require defendants to retract derogatory credit information supplied to credit bureaus[]" (2d Am. Compl. ¶ 35).  He does not appear to claim, however, that exhausting his administrative remedies will cause him irreparable harm.

-14-

In any event, Beattie's second amended complaint does not allege that he asserted his due process claims during the administrative process.  See Action Alliance, 483 F.3d at 857. (See also Def.'s Mot. at 20 (stating that Beattie's request for review of the notice dismissing his request for a hearing did not raise any due process concern).)  Accordingly, Beattie has not exhausted his administrative remedies by presenting his due process claims and receiving a determination on them from the Appeals Council.  See, e.g., Kildare v. Saenz, 325 F.3d 1078, 1086 (9th Cir. 2003) ("Appellants have not been deprived of procedural due process until they have exhausted their administrative remedies, because only then can we determine whether Appellants were deprived of adequate process.").

   B.   Colorable constitutional claims

Even if the exhaustion requirement were waived, Beattie has failed properly to plead his constitutional claims.  "[T]he Court may review an SSA decision if a plaintiff alleges a colorable constitutional claim[.]"  Maiden v. Barnhart, 450 F. Supp. 2d 1, 4 (D.D.C. 2006) (citing Califano v. Sanders, 430 U.S. 99, 109 (1977)).  "A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures." Parrish v. Mallinger, 133 F.3d 612, 615 (8th Cir. 1998).  "[T]he mere allegation of a due process violation" does not suffice to

-15-

state a colorable constitutional claim.  <u>Maiden</u>, 450 F. Supp. 2d
at 4.  Here, Beattie's allegations of the ALJ's misconduct during
the January 14, 2000 hearing (<u>see, e.g.</u>, 2d Am. Compl. ¶¶ 25-28)
are both wholly unsupported and belied by the administrative
record.  The hearing transcript reflects that the ALJ treated
Beattie quite charitably: informing him of his right to counsel,
urging him not to proceed without representation, opining that he
did not appear to have fraudulently accepted the overpayments,
offering to send a "decisional draft" to Beattie's counsel, if
any, and conveying her need for additional time to review
financial records Beattie recently had produced.  (A.R. at 66-67,
69, 73.)  When the ALJ proposed continuing the hearing, Beattie
agreed.  (A.R. at 74-75 ("I'm happy to come back here[]"); <u>see
also</u> Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Opp'n"),
Ex. A, Decl. of ALJ Christine Benagh ("ALJ Decl.") ¶ 5.)  The
transcript reflects no threats against Beattie or his counsel.
(<u>See</u> A.R. at 66-76; ALJ Decl. ¶ 6 ("I never threatened Ms.
Kaufman before, during, or after the hearing with sanctions[.]
. . .  I never informed Mr. Beattie that I would refer him for
criminal prosecution if he did not withdraw his request for a
hearing.")[17].)

---

[17] Beattie's claim that the Assistant U.S. Attorney extorted
from Beattie a promised "hush money payment" to an ALJ "in
exchange for a promise not to prosecute [Beattie]" (2d Am. Compl.
¶¶ 37-42) likewise finds no support in the administrative record.
Nor, in the light of "judicial experience and common sense[,]"
has Beattie nudged this claim "across the line from conceivable

-16-

Various courts have declined to find due process violations under these circumstances.  While Beattie alleges, for example, that the ALJ improperly combined the roles of prosecutor, attorney, and judge, the transcript reflects that the ALJ acted consistent with her broad authority.  (See Def.'s Mot. at 21 (quoting Seavey v. Barnhart, 276 F.3d 1, 8 (1st Cir. 2001) (citing Sims v. Apfel, 530 U.S. 103, 110 (2000)) (stating that "the Commissioner is not a litigant and has no representative at the agency level. . . .  [T]he model is investigatory, or inquisitorial, rather than adversarial.")).  See also, e.g., Liteky v. United States, 510 U.S. 540, 551 (1994) (finding no due process violation where the decision-maker's behavior was not "so extreme as to display clear inability to render fair judgment[]"); Skokos v. Rhoades, 440 F.3d 957, 962 (8th Cir. 2006) ("For the conduct to amount to a constitutional deprivation, the state actor's conduct must be egregious or, in other words, arbitrary, or conscience shocking, in a constitutional sense.") (quotation marks and internal citation omitted).  While all of Beattie's well-pled factual allegations must be accepted as true, "'naked assertion[s]' devoid of 'further factual enhancement'" need not be accepted.  Iqbal, 129 S. Ct. at 1949 (internal citation omitted).  For these reasons,

---

to plausible." Iqbal, 129 S. Ct. at 1950, 1951 (internal quotation marks and citations omitted).

Beattie has failed to state due process claims for which relief can be granted.

II.  FOIA and PRIVACY ACT CLAIMS

     In Count V, Beattie alleges that the agency refused to provide him with "evidence relevant to his overpayment and PASS cases[,]" the requests for which he "transmitted to [the local SSA office] himself."  (2d Am. Compl. ¶¶ 21, 76-83.)  Without invoking any provision of the Privacy Act, or asserting specific FOIA violations, Beattie alleges that the SSA "declined to provide him with documents related to the agency business resources exemption from its resource limits[,]" may have lost his "files due to neglect[,]" and failed to search for them.  (2d Am. Compl. ¶¶ 79-80.)  The Commissioner urges dismissal on the grounds that the claims are "without factual basis and moot." (Def.'s Mot. at 22.)

     A.   The Privacy Act

     Under the Privacy Act, the plaintiff must allege "'that the agency's action in violating the Privacy Act was intentional or willful.'"  Augustus v. McHugh, Civil Action No. 02-2545 (RWR), 2011 WL 5841468, at *8 (D.D.C. Nov. 22, 2011) (quoting Djenasevic v. Exec. U.S. Attorney's Office, 579 F. Supp. 2d 129, 136 (D.D.C. 2008)).  The "government is not liable for every affirmative or negligent act that technically violates the Privacy Act."  Id. (quotation marks and citations omitted).  Instead, the violation

-18-

must be so "patently egregious and unlawful that anyone
undertaking the conduct should have known it unlawful."  <u>Id.</u>
Beattie may meet this high burden by proving "that the offending
agency acted without grounds for believing its actions lawful or
that it flagrantly disregarded the rights guaranteed under the
Privacy Act."  <u>Id.</u> (quotation marks and citation omitted).

The administrative record appears to contradict Beattie's
allegations.  In a July 13, 2000 letter addressed to the SSA's
Office of Disclosure Policy, Beattie reported having filed "two
written FOIA requests in May 1999 and May 2000."  (A.R. at 108.)
The letter requested "[a]ll records or documents in any form
mentioning or pertaining to [him] or relating in any way to [his]
claim for [SSA] benefits, PASS application, or overpayment
cases[,]" particularly the "transcript of [his] conference with"
the ALJ.  (<u>Id.</u>)  He also requested "all documents, records, or
other similar materials in any format[,]" including "any [of
SSA's] policies, procedures, rules, regulations, opinions, and
decisions[]" addressing the business exemption to SSA's
stipulated resource limit for eligible SSI recipients.  (<u>Id.</u> at
108-09.)  Beattie's letter stated that both earlier requests were
denied orally and he sought to file an appeal.  (<u>Id.</u>; <u>see also</u>
<u>id.</u> at 114.)

SSA Freedom of Information Officer Darrell Blevins did not
treat Beattie's letter as an appeal because he found no records

-19-

of Beattie's requests or the SSA's decisions upon them.  (Id. at
111.)  He informed Beattie that the requested information --
including the SSA's Program Operations Manual Systems ("POMS")
and the SSA's regulations -- could be made available at any local
SSA office.  (Id.)  Acting Associate Commissioner for the Office
of Program Support Ramona Frentz later confirmed Blevins's
conclusion that Beattie's letter did not constitute a request for
an appeal.  (Id. at 116.)  By letter to Beattie dated April 17,
2001, she agreed under the Privacy Act, 5 U.S.C. § 552a, to
provide Beattie "any records the [SSA] maintain[ed]" about him.
(Id.)  However, she informed him that he would "need to contact
[his] local Social Security office to obtain records and
documents related to any claim you have made for benefits under a
program administered by SSA[,]" and that the POMS contained "most
of the program information" in which he was interested.  (Id. at
116-117.)  The agency's responses to Beattie's requests are not
even remotely so "patently egregious and unlawful that anyone
undertaking the conduct should have known it unlawful."
Augustus, 2011 WL 5841468, at *8.  Accordingly, Beattie has
failed to make out a claim under the Privacy Act.

> B.   FOIA

Under FOIA, "a federal agency must disclose agency records
unless they may be withheld pursuant to one of the nine
enumerated exemptions listed in § 552(b)."  Augustus, 2011 WL

-20-

5841468, at *5 (internal quotation marks and citation omitted).
FOIA "'calls for broad disclosure of Government records[,]' . . .
[and] courts have construed the exemptions to FOIA very narrowly
to allow for a greater dissemination of information." Id.
(quoting CIA v. Sims, 471 U.S. 159, 167 (1985)).  "A party
requesting agency records under the FOIA must [nonetheless]
comply with the procedures set forth in the regulations
promulgated by that agency." Calhoun v. U.S. Dep't of Justice,
693 F. Supp. 2d 89, 91 (D.D.C. 2010).  "Where a FOIA request is
not made in accordance with the published regulations, the FOIA
claim is subject to dismissal for failure to exhaust
administrative remedies, as '[t]he failure to comply with an
agency's FOIA regulations [for filing a proper FOIA request] is
the equivalent of a failure to exhaust.'" Id. (citation
omitted).  Beattie appears to have failed to exhaust his
administrative remedies since he submitted only a premature FOIA
appeal, rather than an initial FOIA request, to the SSA.  (See
A.R. at 111.)

    Even if Beattie can be considered to have satisfied the
exhaustion requirements, "a plaintiff pursuing an action under
FOIA must establish that the agency has improperly claimed an
exemption as a matter of law or that the agency failed to
segregate and disclose all non-exempt information in the
requested documents." Schmidt v. Shah, Civil Action No. 08-2185

(CKK), 2010 WL 1137501, at *4 (D.D.C. Mar. 18, 2010). Beattie has not specified any FOIA exemption or identified information the agency failed to segregate and disclose. See id. His allegation that the SSA mishandled his file (2d Am. Compl. ¶ 80), constitutes a "naked assertion[] devoid of further factual enhancement[]" and advances only bare allegations of harm. Iqbal, 129 S. Ct. at 1949. Courts in this circuit have held that an agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." Bloeser v. U.S. Dep't of Justice, Civil Action No. 09-02168 (ABJ), 2011 WL 4346704, at *4 (D.D.C. Sept. 19, 2011) (quoting Wilbur, 355 F.3d at 678). In short, the complaint's allegations as to FOIA are insufficient to state a facially plausible claim.

III. BIVENS TORT

Beattie purports to sue five unnamed SSA employees in their individual capacities under Bivens, though his supporting allegations cite only one unnamed ALJ's threats of blackmail, and though no ALJ appears to have been served in his or her individual capacity. (2d Am. Compl. ¶¶ 6, 85; Def.'s Mot. at 25.) A Bivens action is "[a]n action for damages brought against federal officials in their individual capacity [for violations of] the U.S. Constitution." Leyland v. Edwards, 797 F. Supp. 2d

7, 10 (D.D.C. 2011) (citing <u>Bivens</u>, 403 U.S. at 397); <u>see also</u>
<u>Kim v. United States</u>, 632 F.3d 713, 715 (D.C. Cir. 2011) ("It is
well established that <u>Bivens</u> remedies do not exist against
officials sued in their official capacities.")  The Supreme Court
has "only twice considered and approved of money damages [under
<u>Bivens</u>]: for violations of the Fifth Amendment's Due Process
Clause[] . . . and the Eighth Amendment's Cruel and Unususal
Punishment Clause." <u>Doe v. Rumsfeld</u>, 800 F. Supp. 2d 94, 106
(D.D.C. 2011).  However, "[i]t has explicitly declined[] . . . to
extend <u>Bivens</u>'s remedy to plaintiffs claiming to have suffered
constitutional violations at the hands of social security
employees." <u>Ford v. Astrue</u>, Civil Action No. 09-1243 (JEB), 2011
WL 3873762, at *3 (D.D.C. Sept. 2, 2011) (citing <u>Schweiker v.</u>
<u>Chilicky</u>, 487 U.S. 412 (1988) (holding that the SSA's scheme of
administrative and judicial remedies obviated the need for a
<u>Bivens</u> remedy)); <u>accord</u> <u>Munsell v. Dep't. of Agriculture</u>, 509
F.3d 572, 588 (D.C. Cir. 2007).

In <u>Schweiker</u>, the SSA improperly terminated plaintiffs' SSA
payments in 1981 and 1982, causing them to suffer "delays of many
months in receiving disability benefits to which they were
entitled." <u>Schweiker</u>, 487 U.S. at 417-18.  They "were unable to
maintain themselves or their families in even a minimally
adequate fashion after they were declared ineligible." <u>Id.</u> at
418.  The plaintiffs administratively appealed the agency's

-23-

determinations and won both restored and retroactive benefits.
Id. at 417.  They nonetheless sued the SSA Commisssioner for
"emotional distress and for loss of . . . necessities proximately
caused by [his] conduct."  Id. at 419.  The Court concluded that
Congress already "ha[d] addressed the problems created by . . .
wrongful termination of disability benefits[]" and, because
Congress was charged with "design[ing] [the] massive and complex
welfare benefits program," the Court found no legal basis for
revising Congress's decision to exclude the Bivens remedy from
the SSA's administrative and judicial scheme.  Id. at 429, 437.
(See also Def.'s Mot. at 25-26.)  Accordingly, Schweiker bars
Beattie's Bivens claim.  See Schweiker, 487 U.S. at 423 (stating
that recovery under Bivens is inappropriate "[w]hen the design of
a Government program suggests that Congress has provided what it
considers adequate remedial mechanisms for constitutional
violations that may occur in the course of its administration").

<u>CONCLUSION</u>

Beattie has failed to state claims upon which relief can be
granted.  Accordingly, the motion to dismiss the second amended
complaint will be granted, and Beattie's motion for partial
summary judgment as to his Privacy Act claims will be denied as
moot.  A final order accompanies this memorandum opinion.

-24-

SIGNED this 28th day of February, 2012.


_____/s/_____

RICHARD W. ROBERTS
United States District Judge